United States District Court
District of Massachusetts

```
_____
                              )
Coastal Marine Management, LLC )
d/b/a Boston Harbor Shipyard and )
Marina,                        )
                              )
          Plaintiff,          )
                              )     Civil Action No.
          v.                  )     16-11616-NMG
                              )
Additional Return, LLC,       )
                              )
          Intervenor.         )
                              )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This case arises out of a dispute over custodia legis expenses that Boston Harbor Shipyard and Marina has incurred as the custodian of an abandoned vessel under foreclosure. The plaintiff is seeking to enforce an award of custodia legis expenses and claims that it is 1) entitled to the proceeds of the sale of the vessel and 2) that one of the mortgagees, Additional Return, LLC ("Additional Return" or "the intervenor") is required to pay its pro rata share of expenses as an intervenor in this case.

I.    **Background**

In 2008, the purported owners of an abandoned vessel moored at Boston Harbor Shipyard and Marina ("the Shipyard" or "the plaintiff") failed to make payments to the Shipyard for the storage of the vessel and related fees.  In August, 2016, the Shipyard filed a complaint against the owners of the vessel for 1) enforcement of its maritime lien for necessaries against the subject vessel and 2) breach of maritime contract.  That month, the United States Marshals served an in rem warrant on the vessel and arrested it.  This Court subsequently appointed the Shipyard as custodian of the vessel and, on August 16, 2016 (Docket No. 9), ordered that expenses incurred by the Shipyard as custodian would be subject to the following provisions:

> all reasonable expenditures which may be incurred by BHS as substitute custodian, or any party advancing funds to BHS as substitute custodian, in safekeeping or maintaining the vessel while she is in custodia legis, shall be deemed administrative expenses and the first charge on the [v]essel herein, to [be] paid prior to the release of the [v]essel or distribution of the proceeds of its sale;

> any intervenor shall owe debt to any party that has previously advanced funds to cover the expenses of the United States Marshals Service and/or substitute custodian, enforceable on motion, consisting of the intervenor's share of such fees and expenses in the proportion that the intervenor's claim bears to the sum of all claims.

Following that order, Additional Return filed a statement of claim or interest with respect to the vessel for $430,000 (Docket No. 33).  Additional Return submitted that it was filing

the claim to inform the Court that 1) it had a duly perfected mortgage on the vessel, 2) it had no intention of waiving its rights and 3) it did not agree to contribute to payment of fees or expenses incurred by the plaintiff.  Additional Return further noted that it was not seeking to foreclose its mortgage on the vessel at that time.

In January, 2017, the Shipyard moved for interlocutory sale of the vessel and for the right to credit bid up to the amount of the indebtedness of the vessel at such sale.  Additional Return filed an objection to the sale, whereupon this Court entered an order that allowed plaintiff's motion for interlocutory sale but, at the same time, 1) required an appraisal of the vessel prior to the sale and 2) instructed Additional Return to show cause why the Court should not dismiss its claim of interest in the vessel.  Shortly thereafter, in its response, Additional Return asserted that it did not need to intervene in this matter to have standing to object to the sale but then, in a separate pleading on the same day, moved to intervene, provisionally, so that it would have standing to object to the interlocutory sale of the vessel (See Docket No. 66).

After the initial sale of the vessel, this Court held a confirmation hearing with respect to the sale during which it allowed Additional Return's motion to intervene on condition

that the mortgagee share in the <u>custodia</u> <u>legis</u> expenses (<u>See</u> Docket No. 78 and transcript from the hearing).  Despite receiving notice of the hearing, counsel for Additional Return did not appear nor did it object to the Court's subsequent ruling.

Within one week of the confirmation hearing, the plaintiff filed an emergency motion to reopen the sale at foreclosure because a third party had filed an upset bid on the vessel. This Court allowed that motion but spelled out in detail the procedure to be followed with respect to the re-sale (<u>See</u> Docket No. 86).  The vessel was eventually sold for $100,000 and the proceeds of the sale, less the costs incurred by the U.S. Marshals, is currently held in escrow by the Court ($98,391.90).

Following the final sale of the vessel, the plaintiff filed a motion for the disbursement of sale proceeds and apportionment of <u>custodia</u> <u>legis</u> expenses, which is pending before this Court.

## II.  **Legal Analysis**

### A. **Legal Standard**

Expenses incurred with respect to <u>custodia</u> <u>legis</u> are afforded administrative priority because they are necessary to preserve the <u>res</u>. <u>See</u> <u>The Poznan</u>, 274 U.S. 117, 121 (1927). Interested parties, including the preferred ship mortgagee, were clearly informed about that priority when this Court authorized

the initial sale of the subject vessel in August, 2017 (See Docket No. 59).

To be entitled to an award of custodia legis expenses after a pending sale of a vessel, however, the custodian must show that the expenses incurred were "upon the authority of the court or its officer" and were for the "common benefit of those interested in a fund administered by the court". The Poznan, 274 U.S. at 121.

### B. Motion for Disbursement of Sale Proceeds and for Order Apportioning Custodia Legis Expenses Amongst Plaintiff and Intervening Parties

The Shipyard, in its motion for disbursement 1) proffers evidence of its custodia legis expenses for which it seeks reimbursement from the proceeds of the vessel sale and 2) seeks entry of judgment against the mortgagee-intervenor for expenses incurred as custodian.

#### 1. Expenses Incurred for the Common Benefit and Upon the Authority of the Court or the United States Marshals Service

The Shipyard submits that all of the charges claimed as substitute custodian were for the common benefit of all claimed lienholders and incurred upon the authority of the Court or the United States Marshals Service for the District of Massachusetts. The plaintiff claims the right to be reimbursed for the following expenses:

1) insurance premiums to cover the vessel as required by the United States Marshals Service ($4,700);

2) cost of appraisal by a licensed appraiser, Surveyor Collyer ($823.50);

3) labor and material for dock lines for the vessel ($3,145 and $2,500);

4) towing services ($2,500);

5) fees to the United States Marshals Service to arrest the vessel ($4,300);

6) advertising the foreclosure sale of the vessel ($4,165.20);

7) second towing of the vessel to ensure adequate monitoring ($2,860);

8) wharfage, storage and safekeeping of the vessel for approximately 36 months pursuant to the customary rate in Boston Harbor until the sale of the vessel ($282,100); and

9) daily walkthrough and inspection of the vessel to ensure its safekeeping, seaworthiness and security ($35,154).

The total custodia legis expenses amount to $342,247.70.

In its "objection" to the plaintiff's motion, Additional Return does not specifically dispute any of the alleged expenses incurred but implies generally that they are excessive. The plaintiff responds that because Additional Return has not specifically objected to the plaintiff receiving the proceeds currently held in escrow ($98,391.90), those proceeds should be promptly awarded to the plaintiff.

Although the Court agrees with the mortgagee that some of the expenses claimed appear to be excessive, because 1) no party

has objected to specific expenses, 2) no party has objected to
the award of proceeds from the sale of the vessel to the
plaintiff and 3) plaintiff has demonstrated that it has incurred
expenses as custodian for the benefit of claimed lienholders at
least equal to the funds held in escrow, this Court will allow
plaintiff's motion with respect to the award of sale proceeds.

### 2. Apportionment of Custodia Legis Expenses

In addition to being awarded sale proceeds from the vessel,
the Shipyard seeks to recover the remaining custodia legis
expenses of approximately $243,000 from the other plaintiff
intervenors.[1]  All intervenors other than Additional Return have
apparently settled with the plaintiff.

The Shipyard avers that, pursuant to this Court's prior
order, any intervenor, including Additional Return, must
contribute its pro rata share of custodia legis expenses.  In
support of this claim, the Shipyard cites Additional Return's
motion to intervene and this Court's allowance of that motion.
Based on Additional Return's status as an intervenor, the
Shipyard submits that its pro rata share of custodia legis
expenses is 26.6%, i.e., the ratio between Additional Return's
unpaid mortgage ($430,000) and the total lien claims against the

---

[1] This figure represents the total custodia legis fees allegedly
incurred (approximately $342,000) less the proceeds of the sale
(approximately $98,000).

- 7 -

vessel (approximately $1.6 million).  The computed percentage of Additional Return's custodia legis expenses is approximately $64,000.

Additional Return contends that there is no justification for requiring the mortgagee to pay any portion of custodial expenses.  It argues that it filed its initial claim in this case simply to inform the Court that it had not sought to foreclose on the mortgage but that it was entitled to a priority position as the holder of several mortgages on the vessel.  It further contends that the Shipyard asserted that the mortgagee was obligated to appear or the mortgage would become void.

Moreover, Additional Return submits that it filed its motion to intervene only provisionally in the event that the Court rejected its standing to object to the interlocutory sale absent its intervention.  Additional Return maintains that the Court never ruled on its motion to intervene and that at the time it raised its objections to the sale, it believed there was a likelihood that net proceeds would be available to lienholders.

Admiralty law provides that an arresting plaintiff and all other intervening plaintiffs are to share in the costs of maintaining the res until resolution of the case, even when the proceeds of the sale do not exceed the custodia legis expenses. Lubricantes Venoco, Int'l, C.A. v. M/V NEVERIS, 60 F. App'x 835,

842 (1st Cir. 2003); see also Forsht Associates, Inc. v.
Transamerican ICS, Inc., 821 F.2d 1556, 1561 (11th Cir. 1987)
(holding that it is inconceivable that the first party to arrest
a vessel should thereby become wholly liable for the
administrative expense of maintaining it); Beauregard, Inc. v.
Sword Servs., LLC, 107 F.3d 351, 353 (5th Cir. 1997) (holding
that even when a single litigant advances the cost of
maintenance, all claimants are eventually required to share in
such cost).

During an October, 2017, hearing at which counsel for
Additional Return did not appear, this Court allowed its motion
to intervene on the condition that Additional Return share the
custodia legis fees pursuant to the terms of this Court's prior
order.  While this Court acknowledges the apparent ambush of the
plaintiff in seeking to enforce Additional Return's motion to
intervene knowing full well that the proceeds of the sale would
not likely cover its custodia legis expenses, Additional Return
failed to object to its status as an intervenor after this Court
entered its order and after the sale was finalized.  As such,
Additional Return, as an intervenor, is subject to this Court's
initial order concerning the pro rata sharing of custodia legis
expenses.

**ORDER**

Plaintiff's motion for disbursement of sale proceeds and for order apportioning custodia <u>legis</u> expenses amongst the plaintiff and intervening parties (Docket No. 98) is **ALLOWED.**


**So ordered.**

_/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated December 20, 2018